## THE UNITED STATES OF AMERICA *vs.* JOHN WYNNE.

### November 9, 1908.

*Homicide—Murder—Trial—Verdict:* Under the act of Congress of January 15, 1897, empowering the jury to qualify the verdict of guilty by adding the words ''without capital punishment,'' their authority is not limited to cases of palliating or mitigating circumstances, but extends to every case in which, upon a view of the whole evidence, they are of opinion that it would not be wise or just to impose capital punishment.

*Same — Murder — Manslaughter — Malice:*          Murder, manslaughter, malice: defined.

*Same—Intent—Evidence:*     A man's act is evidence of his intent, as a rule; evidence of intent discussed.

*Same—Criminal responsibility—Intoxication, or insanity, of defendant:*     In case of homicide where the actor was in such condition, by reason of voluntary intoxication, as to be incapable of specific intent to kill, or of understanding the nature of his act, the grade of his crime is reduced to manslaughter.

*Evidence—Weight and · sufficiency—Credibility of witnesses:*     The jury are to consider the credibility of witnesses by their manner of testifying, the consistency of their testimony, their means of information and opportunity of knowledge, and their interest in the result of the trial.

*Same—Credibility—Positive, and negative, testimony:*     The testimony of a man who says that he knows a thing, is better than that of another who, though having some opportunity to know, says that he does not know it, or who has a doubt of the matter.     Positive, and negative, testimony discussed.

*Criminal law—Evidence—Presumption of innocence — Reasonable doubt:*     That the defendant is charged with an offense and under indictment, is not evidence against him; the presumption of innocence prevails, notwithstanding.     Reasonable doubt defined.

*Same—Evidence—Presumption of innocence—Burden of proof:*     The fact that the defendant does not take the stand in his own defense is not a circumstance that can be used against him.

*Same—Evidence—Presumptions and burden of proof—Motive:*     The

prosecution is not bound to directly establish an adequate or any motive for the alleged crime.

*Same—Evidence—Presumption of innocence:*   Suspicions and probabilities, and personal opinions of the jurors not formed upon the testimony, are to be given no weight.

*Same—Evidence, circumstantial—Presumption of innocence:*   In order to convict the defendant upon evidence of circumstances, it is necessary, not only that all of the circumstances concur to show that he committed the crime charged, but also that the circumstances are inconsistent with any other rational conclusion.

*Same—Evidence—Statements against interest—Self-serving statements:*   Defendant's statements against interest are entitled to great weight; but what he said for himself, the jury are not bound to believe because said in a statement proved by the prosecution.

*Same—Evidence—Weight and sufficiency—Verdict:*   A criminal case involving much testimony and many facts should not be decided upon the probability or improbability of any one point singled out of the evidence, unless the settlement of such point is decisive of the whole issue, but a safe decision requires due consideration of all the evidence.

*Criminal law—Homicide—Intoxication, or insanity, as defense—Burden of proof:*   Under an indictment for murder, intoxication is no defense or palliation, unless the defendant was thereby rendered incapable of malicious intent, or of forming a design, or of understanding or remembering the lawless nature of the act.—When the defense is intoxication, the burden is on the prosecution to establish the mental soundness of the defendant at the time of the homicide.

*Same—Trial—Jury—Verdict:*   It is proper for the jury in their deliberations to apply to the testimony their general knowledge and judgment derived from experience, observation and reflection, their knowledge of human nature and the customs of society; provided the verdict is based on due consideration of all the evidence.

*Criminal Law*: Indictment for murder under section 5339 R. S. U. S.

*W. T. Rawlins,* Ass't. U. S. District Attorney, and *W. L. Whitney,* Deputy Attorney General of the Territory of Hawaii, for the Prosecution.

*Thompson & Clemons,* Attorneys for Defendant.

DOLE, J.   Charging the jury:

The defendant is charged by the grand jury under its indictment with having committed the crime of murder by kill-

ing Archibold F. McKinnon by blows with a hammer, in the harbor of Honolulu.

The law under which this indictment is found is section 5339 of the Revised Statutes of the United States, and is as follows, as to the description of this offense:

" Every person who commits murder * * * upon the high seas, or in any arm of the sea, or in any river, haven, creek, basin, or bay within the admiralty and maritime jurisdiction of the United States, and out of the jurisdiction of any particular State * * * shall suffer death."

An act of Congress (January 15, 1897: 29 Stat. L. 487) confers upon the jury the right, when an accused is found guilty of the crime of murder, to add to its verdict the words— "without capital punishment."

The right to qualify a verdict of guilty by adding the words "without capital punishment" is thus conferred upon the jury in all cases of murder. The act does not itself prescribe, nor authorize the court to prescribe, any rule defining or circumscribing the exercise of this right; but commits the whole matter of its exercise to the judgment and consciences of the jury. The authority of the jury to decide that the accused shall not be punished capitally is not limited to cases in which the court, or the jury, is of opinion that there are palliating or mitigating circumstances. ' But it extends to every case in which, upon a view of the whole evidence, the jury is of opinion that it would not be just or wise to impose capital punishment.

There are no degrees of murder established by the federal laws, but the following statute provides that a homicide as described, but without malice, is manslaughter:

" Every person who, within any of the places or upon any of the waters described in section fifty-three hundred and thirty-nine, unlawfully and wilfully, but without malice, strikes, stabs, wounds, or shoots at, or otherwise injures another, of which striking, stabbing, wounding, shooting, or other injury such other person dies, either on land or sea, within or

without the United States, is guilty of the crime of man-slaughter." Sec. 5341 R. S. U. S.

The rules of evidence and of the conduct of the trial of a case of this kind, do not materially differ from those relating to the trial of a minor offense, but as this defendant is charged with murder the case is of great importance to the public, which is represented by the United States as plaintiff, and to the defendant as well. The public interests in a case of murder are based on the interest which all persons have in the protection of the individual from violence, and especially from the kind of violence which aims to deprive individuals of life, the greatest possession of mankind. The lawless taking of human life cannot be ignored by the public, because if such conduct is allowed without notice and without interference or punishment, other persons of like disposition will feel that there is immunity in the commission of such crimes, and society and the individual would become exposed to a greater extent to such attacks. The case is also, and obviously, of the greatest importance to the defendant in that his life is subject to your decision of the issue.

In considering the evidence which has been produced in this case, you are to remember that you are the sole judges of all questions of fact, with the right to weigh the evidence, and in doing so to consider the credibility of witness,—by their manner of testifying, the consistency of their testimony and their means of information and their opportunity of knowing the truth of the information which they give, and any interest they may have in the result of the trial.

The fact that the defendant has been charged with this offense and that there is an indictment against him is not evidence against him in any way. The law presumes one charged with an offense to be innocent until he shall have been proved guilty by competent and sufficient evidence, beyond a reasonable doubt, and in the absence of such evidence against this defendant you must find that he is not guilty.

No one can be found to be guilty of a crime unless the evidence against him establishes his guilt beyond a reasonable doubt. By a reasonable doubt is meant a doubt based on reason, which is not a fanciful nor conjectural doubt, but one which must impart such a condition of mind that after a careful consideration of the evidence you cannot say that you are convinced or satisfied that the defendant is guilty as charged; but if, after an impartial comparison and consideration of all the evidence you can truthfully say that you have an abiding conviction of the defendant's guilt, such a conviction as you would be willing to act upon in important matters relating to your own affairs, you have no reasonable doubt.

The duty rests upon the prosecution to prove the defendant guilty beyond all reasonable doubt by evidence which shall exclude every reasonable hypothesis except the one of guilt.

The prosecution is not bound to directly establish an adequate or any motive for the alleged crime. The criminal act and the connection of the accused with it, if proved beyond a reasonable doubt, furnish sufficient evidence that there was some cause or motive influencing the defendant to the perpetration of the act if he was acting under a mental capacity to commit the crime, as elsewhere explained.

In order to convict this defendant upon the evidence of circumstances,—and the admissions of the defendant testified to, are in the nature of circumstances,—it is necessary, not only that all of the circumstances concur to show that he committed the crime charged but also that they are inconsistent with any other rational conclusion. Only when every reasonable hypothesis by which the facts might be explained consistently with innocence have been carefully examined and found wanting, can the conclusion of guilt be legitimately adopted.

You cannot convict this defendant upon evidence merely showing a possible opportunity for the commission of the alleged offense, if there be any such evidence before you, nor can you convict him upon surmises, speculations and conjectures, nor can you convict him upon suspicion, no matter how strong.

In all criminal cases the proof inculpating the accused should be of a degree of certainty transcending mere possibility, or probability, mere surmises and conjectures, and transcending strong suspicion. The evidence in a criminal case may, let it be assumed, create a strong suspicion, or it may create a strong probability that the defendant's complicity in the alleged crime is established as charged, but I instruct you that the law, in its wise and humane demand for the life and liberty of a human being, requires more than a strong suspicion or strong probability; it demands that the evidence should lead to a conclusion of guilt beyond every other hypothesis and to the exclusion of all reasonable doubt. Less than this will not suffice, and you are therefore charged that you will not be justified in finding this defendant guilty upon the grounds that it is more probable that he is guilty, if there are any such grounds, than that he is innocent.

I further instruct you that your personal opinions as to facts not proven cannot possibly be considered as a basis of your convictions. You may believe, as men, that certain facts exist, but as jurors you can only act upon evidence introduced at the trial and from that and that alone you must form your verdict, unaided, unassisted and uninfluenced by any opinion or presumption not formed upon the testimony.

The circumstance that this defendant has not taken the stand in this case is not a circumstance which can be used against him in any way. It is the undoubted right of the defendant to remain mute and insist that the government shall prove the case against him beyond all reasonable doubt, and he is entitled to rest upon his plea of not guilty and upon the presumption of innocence with which he is clothed by law and which follows him until overcome by evidence of his guilt. The defendant in a criminal case is not called upon to make explanations or suggest solutions or clear up ambiguities, either real or imaginary, and I therefore charge you that the circumstance that the defendant has availed himself of his right in this regard is not to be taken against him in any way.

A criminal case involving much testimony and many facts should not be decided upon the probability or improbability of any one point singled out of the evidence, unless the settlement of such point is really decisive of the whole issue, but a safe decision requires due consideration to be given to all the evidence in the case.

You may, in deciding this case, properly exercise your judgment and apply your own knowledge and experience, in regard to the general subject of inquiry. In construing and applying testimony, you may make reasonable inferences and deductions; it is proper for you to apply to the facts proved, your general knowledge as intelligent men; you should test the truth and weight of evidence, and what it proves, by your knowledge and judgment derived from experience, observation and reflection; and it is competent for you to use your knowledge of human nature and of the customs of society, in your efforts to interpret conduct and judge of its indications; provided, however, your verdict must be based upon a due consideration of all the evidence in the case.

The last four counts of the indictment contain the charge in this case, and although it is alleged that the steamship Roscrans, on which the homicide is alleged to have occurred, is a vessel of United States register or enrollment, and is owned by American citizens, yet I charge you that these allegations as to ownership and nationality are unnecessary; that under the law any wilful and unlawful killing of a human being, on any vessel of any nationality, lying in the harbor of Honolulu, is murder, or manslaughter as the case may be; and if you find beyond a reasonable doubt that the defendant wilfully and unlawfully struck McKinnon a fatal blow on board such vessel as alleged, in consequence of which he immediately died on board of such vessel, or if you should find that he survived until after taken ashore and died on shore from the effects of such blow, in either case you would be justified in finding a verdict of guilty of murder or manslaughter according to the evidence as to malice or its absence.

The crime of murder is not defined in the statute and we have to refer to the common law and the decisions of courts therefor, wherein we find that murder is the unlawful killing of any human being by a person of sound memory and discretion, with malice aforethought, express or implied. Malice, in this connection, is an intention to do bodily harm,—a formed design to do mischief. It includes premeditation. There must therefore be a period of prior consideration, but as to the duration of such period no limit can be arbitrarily assigned. There is no time so short but that within it the human mind can form a deliberate purpose to do an act, and if the intent to do mischief to another is thus formed, after no matter how short a period of reflection, it is none the less malice aforethought. The existence or non-existence of malice is a conclusion to be drawn by the jury from all the facts in the case, and from a careful study of the acts of the defendant and of the circumstances connected with the crime charged. The term malice is here used in a technical sense, and includes not merely hatred and revenge, but every bad, unjustifiable motive. Express malice exists when one, with deliberate premeditation and design, formed in advance, kills another, such premeditation and design being manifested by external circumstances capable of proof, such as lying in wait, antecedent threats and concerted schemes to do the party bodily harm. Malice is implied by the law from any deliberate and cruel act committed by one person against another. Thus, it is implied when one man kills another without provocation, or where the provocation is not great; for no person except one of abandoned heart can be guilty of such an act without a cause, or upon any slight cause. The terms express and implied malice in truth indicate the same state of mind, but they are established in different ways; the one by circumstances showing premeditation of the homicide, and the other being inferred only from the act committed.

What a man actually does is evidence of his intention as a rule. It is our common experience that where a man performs an act which will obviously produce a particular result, he has

intended the result. Therefore when a homicide is committed by weapons indicating design, it is not necessary to prove that such design existed at any definite period before the fatal blows. There are, however, more or less other facts and circumstances connected with such conduct which may tend to explain it on the theory of an absence of malice or on a theory of actual lawfulness. For instance, circumstances of self-defense which justify homicide. It also sometimes happens in a case of a homicide that there are circumstances of affray in which a man is killed in the course of a quarrel by a blow unconnected with any intention to kill and so without malice. In such a case the person committing the homicide would be guilty only of manslaughter. There are other circumstances in which a homicide is committed through carelessness or negligence, in which case the inference of malice is explained away and the person committing the homicide is guilty only of manslaughter. But where these and other circumstances which disprove a malicious intent do not exist, then the fact of causing death through the use of a dangerous weapon implies malice and is murder, with the exception that is raised by the defense of insanity or intoxication, where the degree of insanity or intoxication is such that the person committing the homicide is incapable of forming a malicious intent or of harboring a design.

The defense of intoxication is made in this case, and I charge you that it is no defense, excuse or palliation unless it is shown beyond a reasonable doubt to have reached such a stage at the time of the homicide that the defendant was thereby rendered incapable of harboring a malicious intent or of forming a design or of understanding or remembering the lawless nature of the act of taking human life and that it is forbidden and punishable by law. The homicide must be willful and intentional in order to warrant a conviction of murder.

Where the defense of intoxication is made to a charge of murder, the burden is upon the government to establish not only all the other essential facts constituting the offense, but to establish also the proposition that the defendant at the time of

the homicide was of sound mind,—and by this term is not meant that he was of perfectly sound mind but that he had sufficient mind to know that the act he was committing at the time he was performing it, was a wrongful act in violation of human law and that he could be punished therefor, and that he did not perform the act because being of unsound mind he was controlled by irresponsible and uncontrollable impulse, or was incapable of premeditation.

If from all the evidence in the case, you believe beyond a reasonable doubt, that the defendant committed the crime of which he is accused, in manner and form as charged in the indictment, and that at the time of the commission of such crime the defendant knew that it was wrong to commit such crime, and was mentally capable either to do or not to do the act or acts constituting such crime, and of governing his conduct in accordance with such choice, then it is your duty under the law to find him guilty of murder, even though you should believe, from the evidence, that at the time of the commission of the crime he was not entirely and perfectly sane, or that he was greatly excited or enraged, or under the influence of intoxicating liquor.

I instruct you that in order to convict the defendant of any crime under this indictment you must first find beyond all reasonable doubt that he killed the deceased. If you find the fact of killing by defendant, you still cannot find him guilty of murder unless you also find beyond all reasonable doubt that at the time in question the defendant was capable of entertaining that specific intent which is an essential ingredient of the crime, and for this purpose you should take into consideration the nature and circumstances of the assault, the actions, conduct and demeanor of the defendant and his declarations both before and after the homicide, and especially whether his mental capacity was sufficient to enable him to entertain the simple intent to kill under the circumstances, or whether his mental faculties were so obscured by intoxication as to have rendered him incapable of entertaining that intent. On the question of intent

it is proper for you to consider the previous declarations of the defendant which may tend to show that he entertained a grudge of some kind against McKinnon upon grounds that may have been real or fanciful, and any declarations that may have been made by him subsequent to the homicide expressing a similar feeling.

The question as to his responsibility relates to the time of the homicide. It matters not what may have been his condition before or after, although evidence as to his condition before and after may be considered by you in ascertaining his condition at the time of the homicide.

Whether you find that the homicide occurred on the 20th or on the 21st day of September, 1907, is a matter of no consequence to the issue in this case. The essence of the charge is that defendant killed McKinnon with malice, and if you find that it was on or about the time charged it is sufficient.

Although the trial of one charged with the commission of a crime should always be consistent with the principles of justice, that is, he should be tried fairly with all of the privileges, presumptions in his favor and opportunities of defense which the long evolution of the practice of courts, in common law countries have gained for accused persons; yet the end sought for in such a trial is not justice as we understand the word in relation to the trial of a civil case, where the object is. to cause the litigating parties to render to each other what is rightfully due. The purpose of the criminal laws is to protect society, and the trial of one charged with their violation is an inquest as to his guilt, leading to his punishment if he is found guilty, without considering any compensation to the injured parties. The punishment relates to both the criminal and others;—to him by way of removing him for a time or permanently, from opportunities of repeating his crime, and as a lesson and a warning to him against a repetition of his guilty conduct whenever he may regain his liberty, and to others of like criminal tendencies as a deterring object lesson and example.

This explanation may throw some light on the theory reach-

ed by the courts in relation to the defense of insanity, or intoxication, in which a status of responsibility as regards power of deliberation, capability of forming a design or harboring an intent is necessary to a conviction, which if present the fact of insanity or intoxication is not a defense.

The reason of this rule is that the criminal law being enacted for the protection of society against violence and other conduct that is a menace to its security, the question of moral guilt does not figure in the investigation. The punishment of an intoxicated or partially insane person, who, however, at the time of his lawless act, has capacity to commit crime as elsewhere explained, is justified as to himself, for the reasons given above, and, as to others because it is a warning to others including the intoxicated or partially insane who have a criminal capacity, and having it, have sufficient intelligence and caution to be warned and deterred by the punishment of one of like capacity with themselves. This applies to the person who commits a crime while under the influence of liquor, but who still retains sufficient consciousness to be able to form a design or entertain a criminal intent, and to understand the character of the crime committed by him as to its lawlessness, and the liability to punishment of one committing it.

There has been some divergence of opinion in the United States as to cases of homicide in which there is an absence of malice on the part of the defendant, because his mental faculties at the time of the homicide are so demoralized by a condition of intoxication into which he has voluntarily entered that he is incapable of forming a specific intent to kill, some holding that under such circumstances the prisoner should be acquitted and others that he should be found guilty of manslaughter. The Supreme Court of the United States has recently adopted the latter view and I charge you in accordance therewith that if the defendant, at the time of the killing, if you find that he killed McKinnon, was in such a condition of mind, by reason of intoxication voluntarily acquired as to be incapable of forming a specific intent to kill, or of understand-

ing the nature of what he was doing, the grade of his crime would be reduced to manslaughter. Manslaughter is the killing of a man unlawfully and wilfully, but without malice aforethought. Malice aforethought, as I have defined it to you, must be excluded from it; that is the doing of a wrongful act without cause or excuse and in the absence of mitigating facts, in such a way as to show a heart void of social duty and a mind fatally bent upon mischief. If that is driven out of the case it must come under the definition of the crime of manslaughter.

The principle of this rule appears to be this: that where a man voluntarily becomes drunk without any malicious purpose, he has without excuse or justification and with a reckless disregard for the rights and the safety of others, entered into a course of excessive and unrestrained indulgence in intoxicants, in itself a criminal offense, which tends to destroy his judgment and confuse and dull his perceptions, and at the same time to magnify his grievances,—real or fanciful, and to develop delusions, and in short to reduce him to a condition of irresponsibility and frenzy in which the normal restraints to violence are obliterated. In doing this he is held to be responsible for an act of homicide committed while in such condition to the extent at least of being guilty of manslaughter therefor, if his mind was incapable of forming a specific intent at the time of the homicide, or of murder if though intoxicated he yet was capable of such intent and of understanding the lawlessness of the act.

The evidence of the defendant's condition of excitement immediately after the homicide, does not require you to conclude that he was in such a state of excitement at the time of the homicide, for in his stimulated condition, if you believe that he had been drinking throughout the day, the act of the homicide may well have thrown him off his balance to a degree and have produced that state of excitement immediately after the homicide which has been testified to by some of the witnesses. In like manner the evidence that the defendant, while present at the coroner's inquest and after beginning to answer questions

concerning the homicide, became excited or, as he was described by one of the witnesses, became unstrung, such unstrung or excited condition you are at liberty under the testimony to attribute to the fact that the day before he had been drinking considerably, or to the other fact of his narration of the terrible tragedy in which he was himself concerned.

I instruct you that if you find from the evidence that the defendant made any statement or statements in relation to the offense charged in the indictment, after such offense is alleged to have been committed, you must consider such statement or statements all together. What the defendant said against himself, if anything, is likely to be true and is entitled to great weight because said against himself. What he said for himself, you are not bound to believe because said in a statement or statements proved by the United States, but you may believe or disbelieve the whole or any part of it, as it is shown to be true or false by the evidence in the case.

Counsel for the defendant has asked for this instruction as to positive and negative testimony in relation to the evidence of the intoxication of defendant:

"I instruct you that the defendant is presumed to be innocent, and that you cannot therefore convict him on negative testimony, for nothing short of a universal negative excluding every possible doubt, will overcome the presumption in his favor. The positive testimony of one credible witness on any material matter is entitled to more weight than the testimony of several other witnesses equally credible who testify negatively on the same subject."

I can not give this instruction exactly as asked for because it is not clear what the counsel for the defendant means by positive and negative testimony. Positive and negative testimony differs in this way: One witness may testify that a certain person said so and so; another witness may testify that he did not hear him say it. Unless he was so near to the person speaking that he must have heard the testimony, his negative testimony cannot be equal to the testimony of the other wit-

ness who said that he heard him say it; and even if the second witness was near enough to have heard if he had been listening, yet his attention may have been occupied for the moment by something else, so that in that case his testimony is not as strong as that of the other. A denial of a proposition is not negative testimony in the sense that defendant's counsel apparently uses the words. A witness is asked if he went to town on a certain day and he answers "no"; this answer is as good as the testimony of another who asserts that he saw him in town on that day, and may be better, and may be classed as positive testimony. Another witness says that he did not see him in town. This is negative testimony and is worth little, as the man may have been in town without being seen by such witness. A witness who answers "I don't know" to a question is not testifying at all but is stating his inability to testify. There are degress of positive testimony. One says a certain person was angry, another says he was somewhat excited and may have been angry; these are both instances of positive testimony but of different values. Another witness says he was not angry. This is positive testimony though in a negative form and is equal to the statement of the first witness.

Therefore in regard to the testimony of the witnesses in this case in relation to the intoxication of the defendant, you will understand that testimony that may differ as to the confidence of the witnesses as to their ability to answer a question, may be all positive testimony but different in strength. A witness who saw the man and yet makes no statement of his impressions as to the defendant's condition but says substantially that he does not know, is confessing his inability to testify, but if he was so near the man and under circumstances that he ought to have known, such as conversing with him or watching him, then his answer that he "don't know," or words to that effect, may be considered by you as a circumstance bearing on the probability that he would have known or would have received an impression on the subject if the defendant had been con-

siderably intoxicated. On the other hand, the want of confidence of such a witness in his own knowledge might also be considered as to the question of the defendant's condition of sobriety, because usually a man who talks with another man who is perfectly sober would be able to testify to that effect. All of this evidence as to the drunken or sober condition of defendant must be weighed by you under this attempted analysis of such questions, keeping in mind the general rule that the evidence of a man who says that he knows a thing is better than that of another man who says he does not know it, having some opportunity to know, or who has a doubt of the matter.

I instruct you that the harbor of Honolulu is a haven or an arm of the Pacific Ocean, and that the waters of Honolulu harbor are within the admiralty and maritime jurisdiction of the United States, and that the harbor of Honolulu is without the jurisdiction of any particular State.

To recapitulate: To murder, malice aforethought is essential. Malice is a formed design to kill. It includes premeditation, but the action of the mind is sometimes so swift that premeditation may exist within the shortest time. The act of killing implies malicious intent. Where the mind is so confused by intoxication that it is incapable of forming a design to kill or to understand the nature of such an act and its consequences, the crime of murder cannot exist. Where such is the case, if the person has voluntarily placed himself in such condition of intoxication that he is incapable of forming a design to kill, and commits the homicide, he then is guilty of manslaughter.

The presumption of innocence follows the defendant in the trial until overcome by evidence of his guilt. You may not find the defendant guilty of either murder or manslaughter unless from a consideration of all the evidence you are satisfied of his guilt beyond a reasonable doubt. You can only find the defendant guilty when you cannot account for the homicide and the defendant's connection with it on a theory of innocence.

Your verdict may be "guilty of murder," or "guilty of murder without capital punishment," or "not guilty of murder but guilty of manslaughter," or "not guilty."

The unanimous assent of all of the jurors is necessary to any verdict.

*Affirmed*:   See *Wynne vs. United States*, 217 U. S. 234.